**No. 2026-1136**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————

INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC.,

Appellant,

v.

BLACKHAWK NETWORK, INC.,

Appellee,

JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

Intervenor.

———————————

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, No. IPR2024-00465

———————————

## BRIEF FOR INTERVENOR

———————————

*Of Counsel*:

NICHOLAS T. MATICH
 *Solicitor*

ROBERT J. MCMANUS
 *Senior IP Legal Counsel*

WILLIAM LA MARCA
 *Special Counsel for IP Litigation*

FAHD H. PATEL
PETER J. SAWERT
 *Associate Solicitors*

 *U.S. Patent and Trademark Office*

BRETT A. SHUMATE
 *Assistant Attorney General*

BRAD HINSHELWOOD
SAMUEL B. GOLDSTEIN
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7242*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 514-0718*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................... 1

STATEMENT OF JURISDICTION ...................................................................... 3

STATEMENT OF THE ISSUES ............................................................................ 3

STATEMENT OF THE CASE ............................................................................... 3

    A.    Statutory and Regulatory Background ..................................... 3

    B.    Factual and Procedural Background ............................................. 6

SUMMARY OF ARGUMENT ............................................................................... 9

STANDARD OF REVIEW..................................................................................... 11

ARGUMENT ............................................................................................................ 11

I.    This Court Lacks Jurisdiction Over InComm's Appeal........................ 11

    A.    Section 314(d)'s Bar On Review Of Institution-Related Decisions Precludes InComm's Appeal ................................................... 12

        1.    The Director's Decision To End An Inter Partes Review Without A Final Written Decision Is Nonappealable Under Section 314(d).............................................................................. 12

        2.    InComm's Contrary Arguments Lack Merit ................................ 17

    B.    InComm Identifies No Statutory Right To Appeal The Director's Decision Here ............................................................. 25

II.    The Director's Termination Order Was Amply Supported And Reasonably Explained ....................................................................... 31

    A.    The Director Reasonably Determined That The Board Improperly Credited InComm's Expert Testimony ............................ 32

B. The Director Reasonably Explained His Decision To Terminate The Inter Partes Review ...................................................................... 38

CONCLUSION ........................................................................................................ 41

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.,*
    25 F.4th 1354 (Fed. Cir. 2022) ................................................................. 29

*Apple Inc. v. Squires,*
    166 F.4th 1349 (Fed. Cir. 2026) ................................................. 16, 21, 29

*Apple Inc. v. Vidal,*
    63 F.4th 1 (Fed. Cir. 2023) ........................................ 4, 13, 18, 19, 20, 24, 30

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
    880 F.3d 1345 (Fed. Cir. 2018) ................................................................. 27, 28

*Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.,*
    33 F.4th 1348 (Fed. Cir. 2022) ........................................ 13, 14, 15, 16, 21, 24

*BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.,*
    935 F.3d 1362 (Fed. Cir. 2019) ........................... 4, 13, 15, 16, 17, 22, 23, 24, 39

*Block v. Community Nutrition Inst.,*
    467 U.S. 340 (1984) ................................................................................. 30

*Cuozzo Speed Techs., LLC v. Lee,*
    579 U.S. 261 (2016) ........................................................ 4, 21, 25, 26

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.,*
    881 F.3d 1354 (Fed. Cir. 2018) ............................................................... 36

*Ethanol Boosting Sys., LLC v. Ford Motor Co.,*
    162 F.4th 1151 (Fed. Cir. 2025) ................................................ 13, 19, 22

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) ............................................................................. 31, 32

*Federal Express Corp. v. Qualcomm Inc.,*
    --- F.4th ---, No. 2024-1236, 2026 WL 1153767 (Fed. Cir. Apr. 29, 2026) ............. 19

*GEA Process Eng'g, Inc. v. Steuben Foods, Inc.,*
    618 F. App'x 667 (Fed. Cir. 2015) ............................................................ 26

*GTNX, Inc. v. INTTRA, Inc.*,
   789 F.3d 1309 (Fed. Cir. 2015) ........................................... 13, 20, 26, 27, 31

*Hyman v. Brown*,
   927 F.3d 639 (2d Cir. 2019) ....................................................... 40

*IGT v. Zynga Inc.*,
   144 F.4th 1357 (Fed. Cir. 2025) ........................................ 11, 21, 25

*In re Motorola Sols., Inc.*,
   159 F.4th 30 (Fed. Cir. 2025) ............................................. 5, 13, 22

*In re Palo Alto Networks, Inc.*,
   44 F.4th 1369 (Fed. Cir. 2022) ................................................. 16

*Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*,
   839 F.3d 1382 (Fed. Cir. 2016) ....................... 13, 14, 18, 19, 22, 23, 24, 26

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*,
   989 F.3d 1375 (Fed. Cir. 2021) .......................... 12, 21, 26, 28

*Nebraska Pub. Power Dist. v. United States*,
   590 F.3d 1357 (Fed. Cir. 2010) ................................................ 29

*NLRB v. Pittsburgh S.S. Co.*,
   337 U.S. 656 (1949) ............................................................... 39

*SAS Inst. Inc. v. Iancu*,
   584 U.S. 357 (2018) ...................................... 4, 18, 20, 21

*Sierra Wireless, ULC v. Sisvel S.p.A.*,
   130 F.4th 1019 (Fed. Cir. 2025) ............................................. 32

*Skky, Inc. v. MindGeek, s.a.r.l.*,
   859 F.3d 1014 (Fed. Cir. 2017) ............................................... 38

*Sling TV, LLC v. Realtime Adaptive Streaming LLC*,
   840 F. App'x 598 (Fed. Cir. 2021) ..................... 13, 15, 17, 20, 23, 28

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
   749 F.3d 1373 (Fed. Cir. 2014) ............................... 12, 25, 26

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
   18 F.4th 1377 (Fed. Cir. 2021) ............................................... 32

*Thryv, Inc v. Click-to-Call Techs., LP,*
  590 U.S. 45 (2020) ............................................................ 13, 15

*Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.,*
  35 F.4th 1352 (Fed. Cir. 2022) .................................................. 36, 40

*United States v. Arthrex, Inc.,*
  594 U.S. 1 (2021) ................................. 1, 2, 5, 6, 16, 17, 21, 31, 37

*United States v. Erika, Inc.,*
  456 U.S. 201 (1982) ............................................................ 30

*Wynnewood Refin. Co. v. EPA,*
  77 F.4th 767 (D.C. Cir. 2023) ................................................ 40

**Statutes:**

Leahy-Smith America Invents Act,
  Pub. L. No. 112-29, 125 Stat. 284 (2011) .................................. 3

5 U.S.C. § 701(a)(1) ............................................................ 20, 30

5 U.S.C. § 701(a)(2) ............................................................ 20

5 U.S.C. § 704 .................................................................. 29

5 U.S.C. § 706 .................................................................. 31

28 U.S.C. § 1295(a)(4)(A) ................................. 3, 10, 12, 25, 26, 27

35 U.S.C. § 141(c) .................................................... 2, 5, 25, 30

35 U.S.C. § 311(a) .............................................................. 4

35 U.S.C. § 314(a) .............................................................. 4, 16

35 U.S.C. § 314(b) .............................................................. 4

35 U.S.C. § 314(d) ..................................................... 1, 5, 12, 14

35 U.S.C. § 315(b) .............................................................. 14

35 U.S.C. § 315(e) .............................................................. 28

35 U.S.C. § 316 ................................................................. 5

35 U.S.C. § 316(b) ........................................................................... 24

35 U.S.C. § 318(a) ..................................... 2, 5, 12, 22, 24, 25, 26, 30

35 U.S.C. § 319 ......................................... 2, 3, 5, 12, 25, 27, 30

35 U.S.C. § 329 ................................................................................ 26

**Regulations:**

37 C.F.R. pt. 42 ................................................................................. 5

37 C.F.R. § 42.4(a) .................................................................... 4, 16

37 C.F.R. § 42.73(b) ........................................................................ 27

37 C.F.R. § 42.75(a) ........................................................................... 6

37 C.F.R. § 42.75(b) ........................................................................... 6

37 C.F.R. § 42.75(c) ........................................................................... 6

37 C.F.R. § 42.75(d) ........................................................................... 6

37 C.F.R. § 42.75(d)(1) ..................................................................... 27

37 C.F.R. § 42.75(e)(2) ....................................................................... 6

37 C.F.R. § 42.75(e)(3) ................................................................... 6, 31

**Other Authorities:**

*Rules Governing Director Review of Patent Trial and Appeal Board Decisions*,
   89 Fed. Reg. 79,744 (Oct. 1, 2024) ................................................... 6

Memorandum from John A. Squires to All PTAB Judges
   (Oct. 17, 2025), https://perma.cc/MZ99-X26J ..................................... 4

## STATEMENT OF RELATED CASES

No other appeal in or from this agency proceeding has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(a)(2).

## INTRODUCTION

Interactive Communications International, Inc. (InComm) petitioned for inter partes review of a patent owned by Blackhawk Network Inc. The Patent Trial and Appeal Board instituted review and issued a final written decision holding all challenged claims unpatentable. The Director of the United States Patent and Trademark Office (USPTO)—exercising his authority to review final Board decisions under *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021)—determined that the Board erred in crediting the testimony of InComm's expert witness, who had provided inconsistent and contradictory testimony about how he proposed to combine the asserted prior art. Due to these critical inconsistencies, the Director vacated the Board's final written decision. Ordinarily, this vacatur would have led to a remand to the Board, including to address the petition's remaining unpatentability grounds. But given the Director's assessment of this expert's credibility, the Director determined that it would be "inappropriate" to rely on his testimony for those other grounds and terminated the proceeding. Appx4.

This Court lacks jurisdiction over InComm's appeal from the Director's order for two independent reasons. First, Congress provided that the agency's "determination . . . whether to institute an inter partes review . . . shall be final and nonappealable." 35 U.S.C. § 314(d). As this Court has consistently recognized, this provision bars appeal not only of the agency's initial determination whether to institute review, but also of later determinations to deinstitute or terminate a

previously instituted proceeding.  Second, Congress specified that a party to an inter partes review generally may appeal only from a "final written decision with respect to the patentability of any patent claim challenged," *id.* § 318(a); *see id.* §§ 141(c), 319, and *Arthrex* makes clear that only the USPTO Director has the authority to "finally resolve" the inter partes review "within the Executive Branch," 594 U.S. at 26.  The Director's order here is not such a final written decision.  To the contrary, it expressly vacated the only findings regarding patentability that the Board made—leaving all parties in the same legal position they would have been had the Board never issued its decision—and then deinstituted the proceeding.  InComm's appeal thus falls outside the limited instances in which Congress granted this Court jurisdiction to entertain appeals from inter partes review proceedings.

Jurisdictional defects aside, InComm's challenges to the Director's decision are meritless.  InComm's expert disclaimed that a certain arrangement of the prior art reflected his proposed combination and then, within the same transcript page, changed course and stated that the same arrangement was consistent with his proposal.  Given that discrepancy on a core aspect of his obviousness opinion, the Director reasonably concluded both that the Board had improperly credited this testimony and that the agency should not rely on this expert's testimony in other respects.  And after vacating the Board's final written decision, the Director reasonably terminated the inter partes review; doing otherwise would have required the agency to devote its limited resources to deciding the petition's remaining grounds

2

without credible expert support.  The Director's decision thus easily meets the

minimal standard of rationality under the Administrative Procedure Act (APA).

## STATEMENT OF JURISDICTION

The Director issued an order vacating the Board's final written decision and

terminating the inter partes review proceeding on October 9, 2025.  Appx1-4.

InComm filed a notice of appeal on October 31, 2025.  Appx2293-2295.  InComm

invokes this Court's jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 319.

Br. 4-5.  As explained below, this Court lacks jurisdiction over InComm's appeal.

*Infra* pp. 11-31.

## STATEMENT OF THE ISSUES

1.  Whether this Court lacks jurisdiction over InComm's appeal because 35

U.S.C. § 314(d) precludes judicial review of the Director's deinstitution decision, and

no statutory provision affirmatively authorizes an appeal of the Director's decision.

2.  If this Court has jurisdiction over InComm's appeal, whether the Director's

deinstitution decision was reasonable and reasonably explained.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

1.  In the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284

(2011) (AIA), Congress created inter partes review, which "allows a third party to ask

the [USPTO] to reexamine the claims in an already-issued patent and to cancel any

claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 265 (2016).

Any person other than the patent owner can file a petition requesting inter partes review of a patent. 35 U.S.C. § 311(a). After receiving the petition and any response, the USPTO's Director "shall determine whether to institute an inter partes review." *Id.* § 314(b).[1] Under Section 314(a), the Director "may not authorize an inter partes review to be instituted" unless he finds a "reasonable likelihood that the petitioner would prevail with respect to" at least one challenged claim. *Id.* § 314(a). But "the statute uses no language commanding institution" even if the Director finds a reasonable likelihood of success. *Apple Inc. v. Vidal (Apple I)*, 63 F.4th 1, 6 (Fed. Cir. 2023). Accordingly, the AIA "grants the Director discretion not to institute even when the threshold is met" based on considerations such as "administrative efficiency." *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 935 F.3d 1362, 1365 (Fed. Cir. 2019) (quotation marks omitted); *see also SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 366 (2018) (noting that "§ 314(a) invests the Director with discretion on the question whether to institute review" (emphasis omitted)).

---

[1] At the time of the institution decision here, the Director had delegated the authority to institute inter partes reviews to the Board. *See* 37 C.F.R. § 42.4(a). In October 2025, Director Squires announced that, going forward, he would make institution decisions himself, in consultation with Board judges. Memorandum from John A. Squires to All PTAB Judges (Oct. 17, 2025), https://perma.cc/MZ99-X26J.

4

Congress not only "committed institution decisions to the Director's discretion," it also "protected that exercise of discretion from judicial review." *In re Motorola Sols., Inc.*, 159 F.4th 30, 36 (Fed. Cir. 2025).  In particular, Section 314(d) specifies that the "determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d).  Section 314(a) and (d) together "commit[] the decision to institute inter partes review to the Director's unreviewable discretion." *Arthrex*, 594 U.S. at 8-9.

If an inter partes review is instituted, the Board conducts a proceeding to determine the challenged claims' patentability.  *See* 35 U.S.C. § 316; 37 C.F.R. pt. 42.  Unless the inter partes review is "dismissed," the Board must "issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner." 35 U.S.C. § 318(a).  "A party dissatisfied with the final written decision of the [Board] under section 318(a) may appeal the decision" to this Court.  *Id.* § 319; *see id.* § 141(c).

2.  In *Arthrex*, the Supreme Court held that the "unreviewable authority" of the Board's administrative patent judges to "issue a final decision binding the Executive Branch" in inter partes reviews was "incompatible with their appointment by the Secretary [of Commerce] to an inferior office." 594 U.S. at 23.  As a remedy for this Appointments Clause defect, the Supreme Court concluded that the Board's final written decisions "must be subject to review by the Director," and the Director must be able to "issue decisions himself on behalf of the Board." *Id.* at 24-25.  The Court

emphasized that it must be the Director, not the Board, who holds the authority to "finally resolve" an inter partes review "within the Executive Branch." *Id.* at 26.

To implement *Arthrex*'s remedy, the USPTO promulgated regulations establishing a process for Director review of certain Board decisions, including final written decisions in inter partes reviews. *See Rules Governing Director Review of Patent Trial and Appeal Board Decisions*, 89 Fed. Reg. 79,744, 79,748 (Oct. 1, 2024). Under these regulations, a party to an inter partes review may request Director review of a final written decision issued by the Board. *See* 37 C.F.R. § 42.75(a), (c). The Director may also initiate Director review sua sponte. *Id.* § 42.75(b). If the Director denies review, or no party timely requests Director review, the Board's final written decision becomes the USPTO's final agency decision. *Id.* § 42.75(d). If the Director grants review, the Director "shall issue an order or decision" providing his "disposition of the case." *Id.* § 42.75(e)(2). A party "may appeal" the Director's decision "using the same procedures for appealing" final written decisions under Section 319. *Id.* § 42.75(e)(3).

### B.     Factual and Procedural Background

1. Blackhawk owns U.S. Patent No. 11,488,451, which claims methods for activating and selling pre-printed lottery tickets using retailers' existing point-of-sale hardware. Appx62; Appx77-78. In January 2024, InComm petitioned for inter partes review of all claims of the '451 patent. Appx7; Appx95. InComm asserted four grounds of unpatentability for obviousness—two relying on a prior-art patent (Irwin),

and two relying on a combination of another prior-art patent (Szrek) and a prior-art patent application (Llach). Appx10-11; Appx96; Appx164-165. InComm relied on a declaration from its expert, Michael Hutton, to support its obviousness arguments on all four grounds. *See, e.g.*, Appx107-123; Appx141-153. The Board instituted an inter partes review, finding a reasonable likelihood that InComm would succeed in proving at least one challenged claim unpatentable. Appx265-266.

After a trial, the Board issued a final written decision holding all claims of the '451 patent unpatentable for obviousness based on the grounds involving Szrek and Llach. Appx59-60. InComm had asserted that Szrek and Llach could be combined in two "alternative" configurations illustrated in Exhibits 2049 and 2050, which were created during Mr. Hutton's deposition. Appx370-371; *see* Appx33-35; Appx1789; Appx1798. The Board found "not credible" Mr. Hutton's "explanation as to how his [d]eclaration supports" the Exhibit 2049 configuration. Appx37. And the Board described Mr. Hutton's testimony about the Exhibit 2050 configuration as "confusing," observing that Mr. Hutton "at first[] rejected the arrangement shown in Exhibit 2050." Appx37 n.16. But the Board ultimately credited Mr. Hutton's testimony based on Exhibit 2050, stating that Mr. Hutton subsequently "confirmed that Exhibit 2050 reflects one arrangement of the combination that falls within what he intended to convey in his [d]eclaration." Appx37 n.16.

Based on that testimony, the Board found that a skilled artisan would have been motivated to combine Szrek and Llach "as reflected in Exhibit 2050" and would

7

have had a reasonable expectation of success. Appx45. Further, the Board found that Szrek, Llach, and a third prior-art reference together disclose each element of the challenged claims. Appx45-55. The Board thus concluded that InComm had proven all challenged claims unpatentable for obviousness based on the Szrek-Llach combination. Appx54-56. The Board declined to address whether InComm "also ha[d] shown the claims to be unpatentable based on" the petition's "alternative grounds" involving Irwin. Appx56.

2. Blackhawk requested Director review of the Board's final written decision. Appx607-624. The Director determined that the Board "abused its discretion by improperly crediting" Mr. Hutton's testimony, which contained "multiple material contradictions." Appx3. For instance, the Director found that "Mr. Hutton gave conflicting testimony about how he proposed that the ordinarily skilled artisan would have modified Szrek's disclosures to include" the relevant disclosure from Llach. Appx3. In particular, "Mr. Hutton testified on cross-examination that Exhibit 2050 does not represent the modification described in his declaration but later reversed himself and claimed that it does represent his proposal." Appx3 (footnote and citations omitted) (citing Appx1831, Appx1835-1836). And the Board itself found that Mr. Hutton's testimony "lacked credibility at least in certain respects." Appx3 (citing Appx37). Because Mr. Hutton's "contradictory testimony" was "central" to InComm's theory of a motivation to combine Szrek and Llach, and the Board

8

"rested" its motivation-to-combine finding on that testimony, the Director "vacated" the Board's "finding of unpatentability on the Szrek-based grounds." Appx3.

The Director observed that the Board's final written decision "did not reach" the petition's "other grounds" based on Irwin but that these grounds also "rely on Mr. Hutton's testimony." Appx4. "Having determined that Mr. Hutton is not credible as to multiple material aspects of his testimony," the Director explained, "it would be inappropriate in this instance to rely on this testimony for the other grounds." Appx4. The Director thus "vacated" the Board's final written decision and "terminated" the proceeding. Appx4.[2] The Director specified that his order "does not constitute a final written decision under 35 U.S.C. § 318(a)." Appx4.

3. InComm appealed the Director's order terminating the inter partes review. Appx2294. This Court granted the Director leave to intervene in the appeal and directed the parties to "include their jurisdictional arguments in their merits briefs." Dkt. 14.

## SUMMARY OF ARGUMENT

I. For two independent reasons, this Court lacks jurisdiction over InComm's appeal of the Director's order vacating the Board's final written decision and

---

[2] The original version of the Director's order stated that the Board's Szrek-based unpatentability finding and final written decision were "reversed." Appx1975-1976. Several days later, the Director issued a "supersed[ing]" order that replaced "reversed" with "vacated" to more accurately reflect the Director's intended disposition. Appx1 n.1, Appx3-4.

terminating the inter partes review. First, in Section 314(d), Congress barred judicial review of the USPTO's decisions whether to institute an inter partes review. This Court has repeatedly held that USPTO decisions to deinstitute or terminate a previously instituted inter partes review are unreviewable under Section 314(d). After all, such a deinstitution decision is nothing more than a reconsideration of the agency's earlier decision to institute an inter partes review. InComm attempts to avoid these settled precedents by asserting that the Director lacked statutory authority to terminate the inter partes review without a final written decision. But this Court rejected much the same contention in its previous cases.

Second, no statutory provision affirmatively authorizes InComm to appeal the Director's deinstitution decision. Only a final written decision with respect to the patentability of the challenged claims may be appealed under Section 319, and this Court has held that its jurisdiction under 28 U.S.C. § 1295(a)(4)(A) is generally coextensive with Section 319's appeal right. The Director's order here is not such a final written decision—on the contrary, it explicitly vacates the Board's obviousness holding and makes no patentability determination one way or the other—so there is nothing for InComm to appeal. InComm's accusation that the USPTO is seeking to insulate the Board's unpatentability decision from judicial review is therefore baseless. The Board's vacated final written decision no longer has any legal consequences, and the Director's deinstitution decision leaves both InComm and Blackhawk in the same legal position as if the agency had declined to institute review in the first instance.

10

II. Even if this Court could address InComm's challenges on the merits, InComm's challenges to the Director's order here lack merit. Even assuming the APA's cause of action were available, the Director reasonably explained his determination that the Board had improperly relied on InComm's expert testimony. After all, InComm's expert contradicted himself on a basic question of how he proposed that a skilled artisan would have combined the teachings of the asserted prior art. And because even the unpatentability grounds that the Board had not resolved relied on InComm's non-credible expert testimony, the Director reasonably terminated the inter partes review rather than remand to the Board. Such determinations about witness credibility and appropriate use of agency resources are uniquely within the agency's discretion to consider. InComm fails to show that the Director transgressed that broad discretion here.

## STANDARD OF REVIEW

This Court "decide[s] legal issues de novo, including whether a statute precludes judicial review and whether challenged agency action is not in accordance with the law or without observance of procedure required by law." *IGT v. Zynga Inc.*, 144 F.4th 1357, 1365 (Fed. Cir. 2025) (quotation marks omitted).

## ARGUMENT

### I.   This Court Lacks Jurisdiction Over InComm's Appeal

This Court lacks jurisdiction over InComm's appeal from the Director's order vacating the Board's final written decision and terminating the inter partes review.

11

InComm invokes 28 U.S.C. § 1295(a)(4)(A), which gives this Court jurisdiction over "an appeal from a decision of . . . the [Board] . . . with respect to" an "inter partes review." *See* Br. 4-5. But several "more specific" provisions of the AIA "limit[]" this Court's "§ 1295 jurisdiction." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1378-79 (Fed. Cir. 2021); *see also St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014) (similar). Section 314(d) bars appeal of the Director's "determination . . . whether to institute an inter partes review." 35 U.S.C. § 314(d). And Section 319 authorizes appeal from only a "final written decision of the [Board] under section 318(a)," 35 U.S.C. § 319, that is, "a final written decision with respect to the patentability of any patent claim challenged," *id.* § 318(a). Each of these limitations on this Court's jurisdiction independently precludes InComm's attempt to appeal the Director's decision to end an inter partes review without a final written decision with respect to patentability.

### A. Section 314(d)'s Bar On Review Of Institution-Related Decisions Precludes InComm's Appeal

#### 1. The Director's Decision To End An Inter Partes Review Without A Final Written Decision Is Nonappealable Under Section 314(d)

Section 314(d) provides that the "determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d). The statutory text reflects a "broadly worded bar on appeal" of decisions related to institution. *St. Jude*, 749 F.3d at 1376. It precludes an appeal of

12

the institution decision not only when the Director declines to institute, but also when raised "in a proper appeal of a final written decision reached by the Board after a positive institution determination." *Apple I*, 63 F.4th at 7. Moreover, Section 314(d) "is not confined to" the Director's "threshold determination" of "whether the petitioner has a reasonable likelihood of prevailing." *Thryv, Inc v. Click-to-Call Techs., LP*, 590 U.S. 45, 56 (2020). Rather, the statute "bars review at least of matters 'closely tied to the application and interpretation of statutes related to' the institution decision." *Id.* at 53 (quoting *Cuozzo*, 579 U.S. at 275).

This Court has repeatedly held that a decision to "deinstitute" or terminate a previously instituted inter partes review "is, like an original decision not to institute, 'final and nonappealable' under 35 U.S.C. § 314(d)." *Sling TV, LLC v. Realtime Adaptive Streaming LLC*, 840 F. App'x 598, 599 (Fed. Cir. 2021); *see also Motorola*, 159 F.4th at 36; *Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.*, 33 F.4th 1348, 1353 (Fed. Cir. 2022); *BioDelivery*, 935 F.3d at 1366-67; *Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1384-85 (Fed. Cir. 2016); *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309, 1311-12 (Fed. Cir. 2015). After all, "administrative agencies possess inherent authority to reconsider their decisions." *Medtronic*, 839 F.3d at 1385 (quoting *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008)). And "[i]t is difficult to conceive of a case more 'closely related' to a decision to institute proceedings than a reconsideration of that very decision." *Id.* at 1384 (quoting *Cuozzo*, 579 U.S. at 275-76); *see also Ethanol Boosting Sys., LLC v. Ford Motor Co.*, 162 F.4th 1151,

13

1158 (Fed. Cir. 2025) ("[A]n attack on a Board's reconsideration decision looks no different than an attack on its institution decision."). Section 314(d)'s text reinforces this conclusion. It bars appeal of a "determination . . . whether to institute," 35 U.S.C. § 314(d), which is "not limited to an *initial* determination to the exclusion of a determination on reconsideration,'" *Medtronic*, 839 F.3d at 1386 (quotation marks omitted).

Notably, this Court has concluded that Section 314(d) bars appeal of a deinstitution or termination decision even after the Board has issued a final written decision. For instance, in *Atlanta Gas*, the Court affirmed the Board's unpatentability determinations in its final written decision but remanded for the Board to reconsider a sanctions issue. *See* 33 F.4th at 1352. On remand, the Board "vacated its institution decision" and "terminated the proceeding" due to changed USPTO policy on Section 315(b)'s time bar. *Id.*; *see* 35 U.S.C. § 315(b) (inter partes review "may not be instituted" if petition filed more than one year after petitioner "is served with a complaint alleging infringement of the patent"). The petitioner appealed the Board's termination decision, but this Court dismissed for lack of jurisdiction, relying on its precedents barring appeal of the Board's "reconsideration of its institution decision." *Atlanta Gas*, 33 F.4th at 1352, 1354 (citing *BioDelivery*, 935 F.3d at 1367). "The fact that the Board's termination decision occurred on remand" after a final written decision did not require a different result. *Id.* at 1353. "[W]hen the Board chooses to

14

vacate its institution decision, even on remand, § 314(d)'s no-appeal bar makes clear that it is outside of [the Court's] jurisdiction to review." *Id.*

These precedents foreclose InComm's appeal of the Director's order here. The Director "vacated" the Board's final written decision and "terminated" the inter partes review proceeding. Appx4. That is materially indistinguishable from the non-appealable order in *Atlanta Gas*, which "vacat[ed] . . . the Institution Decision and Final Written Decision" and "terminat[ed] . . . the proceeding." 33 F.4th at 1352. The Director also expressly stated that he was not issuing a "final written decision" and cited *Sling TV*, in which this Court held that Section 314(d) barred appeal of a similar deinstitution decision. Appx4; *see Sling TV*, 840 F. App'x at 598-99.

Moreover, the basis for the Director's decision was "closely tied to the application . . . of statutes related to the institution decision." *Thryv*, 590 U.S. at 53 (quotation marks omitted). The Director determined that further proceedings would be "inappropriate" because all the petition's unpatentability grounds—both those that the Board decided and those it did not reach—relied on InComm's "contradictory" expert testimony. Appx3-4. That reasoning is much like the Board's rationale in *BioDelivery*—cited by the Director (Appx4)—where the Board deinstituted an inter partes review after the Supreme Court rejected partial institution in *SAS*, finding that most of the petition's grounds "did not meet the threshold standard for institution" and "would have likely led to" a decision rejecting those grounds. 935 F.3d at 1367. Such considerations of "administrative efficiency" are "uniquely within [the agency's]

15

discretion to consider" in determining whether to institute an inter partes review

under Section 314(a). *Atlanta Gas*, 33 F.4th at 1354 (quotation marks omitted); *see*

*BioDelivery*, 935 F.3d at 1365, 1367 (similar). Section 314(d) thus "bars judicial review"

of the Director's "exercise of [his] discretion" under Section 314(a) over whether an

inter partes review should continue to be instituted. *BioDelivery*, 935 F.3d at 1367.

It is of no moment that instead of the Board reconsidering the initial institution

decision, the Director here did so himself on Director review of the Board's final

written decision. Under the Supreme Court's Appointments Clause remedy in

*Arthrex*, "[t]he Director . . . may review final [Board] decisions and, upon review, may

issue decisions himself on behalf of the Board." 594 U.S. at 25. Thus, the Director's

order has the same effect as a Board decision to deinstitute an inter partes review after

a final written decision—which falls squarely within Section 314(d)'s appeal bar.

*Atlanta Gas*, 33 F.4th at 1354. Indeed, when the Director rather than the Board

reconsiders institution, that procedure, if anything, is even more clearly consistent

with the statute, since the AIA vests the discretion over institution decisions in the

"Director." 35 U.S.C. § 314(a). "Although the Director delegated that authority to

the Board, the Director plainly has the authority to revoke the delegation or to

exercise her review authority in individual cases despite the delegation." *In re Palo Alto*

*Networks, Inc.*, 44 F.4th 1369, 1375 (Fed. Cir. 2022) (citing 37 C.F.R. § 42.4(a)); *see also*

*Apple Inc. v. Squires* (*Apple II*), 166 F.4th 1349, 1353 (Fed. Cir. 2026) (similar). Once

the Director determined that the Board's final written decision would not "finally

16

resolve" the inter partes review for "the Executive Branch" and vacated that decision, *Arthrex*, 594 U.S. at 26, the proceeding was no different than any other ongoing inter partes review, and subject to deinstitution at the Director's discretion.

### 2.    InComm's Contrary Arguments Lack Merit

InComm provides no sound basis to depart from this Court's settled precedents holding that Section 314(d) precludes appeal of deinstitution decisions.

a.  InComm contends that, unlike the orders this Court held non-appealable in *Atlanta Gas*, *Medtronic*, and *GTNX*, the Director here terminated the inter partes review without formally "vacat[ing] the Board's institution decision or dismiss[ing] InComm's [p]etition." Br. 28-29; *see* Br. 24 (similar).  But the Board's decision at issue in *Sling TV* "terminated" the inter partes reviews without expressly vacating the institution decision or dismissing the petition.  Order Granting Patent Owner's Motion to Terminate at 9, *Sling TV, LLC v. Realtime Adaptive Streaming, LLC*, No. IPR2018-01331, Paper 39 (Jan. 17, 2020).  This Court nonetheless treated the Board's order as a "deinstitution decision" that was "'final and nonappealable' under 35 U.S.C. § 314(d)." *Sling TV*, 840 F. App'x at 599.  In any event, none of this Court's decisions have attached any particular significance to the form in which the agency determines that an "instituted" inter partes review will not "proceed through [a] final written decision[]." *BioDelivery*, 935 F.3d at 1366.

InComm likewise errs in asserting that the Director's order was "not an institution decision" because it relied on evidence "procured . . . after institution."

17

Br. 24. The same was true in *Medtronic*, where the Board "terminated the proceedings" based on post-institution "discovery regarding [a third party's] status as a real party in interest." 839 F.3d at 1383-84. InComm identifies no authority precluding the USPTO from reconsidering institution based on information or circumstances arising after the initial institution decision. When the agency does so, "§ 314(d) operates to bar review of the [USPTO's] reconsideration of its decision to institute inter partes review proceedings." *Id.* at 1386.

b. InComm similarly fails in its attempts to analogize its challenges to those the Supreme Court held reviewable in *SAS*. Br. 31-32. The petitioner in *SAS* contended that the Board's "final written decision" violated Section 318(a) because it did not "address every claim the petitioner present[ed] for review." 584 U.S. at 370. The fact that such a claim had a "merely collateral effect" on the institution decision—by requiring it "to be essentially an all-or-nothing one"—did not "bring *SAS* within" Section 314(d)'s "principle of unreviewability." *Apple I*, 63 F.4th at 12.

Here, by contrast, InComm contends (*see* Br. 34-49) that the Director acted arbitrarily and capriciously in terminating the inter partes review—a decision "fairly characterized as a decision whether to institute proceedings." *Medtronic*, 839 F.3d at 1385. To the extent InComm also challenges the Director's statutory authority to terminate the inter partes review without a final written decision (*see* Br. 31), that claim similarly concerns the agency's decision about whether the proceeding should continue to be instituted. InComm's challenges thus "have institution as their direct,

18

immediate, express subject" and are accordingly barred under Section 314(d). *Apple I*, 63 F.4th at 12; *see also Ethanol Boosting*, 162 F.4th at 1158 (holding that Section 314(d) barred challenge that "would require [the Court] to uproot the finality" of "the Board's reconsideration of institution"). As this Court recently reiterated, Section 314(d) precludes challenges that, like InComm's claims here, are "framed to be a challenge over the 'manner' in which the Board's review proceeded" but that "ultimately still boil[] down to a challenge over whether there should have been institution at all." *Federal Express Corp. v. Qualcomm Inc.*, --- F.4th ---, No. 2024-1236, 2026 WL 1153767, at \*5 (Fed. Cir. Apr. 29, 2026).

This Court has rejected similar attempts to repackage a challenge to reconsideration of an institution decision as a challenge to the manner in which the inter partes review proceeds. For example, the petitioner in *Medtronic* argued that Section 314(d) did not apply because it was "challeng[ing] the [Board's] statutory authority to issue the [t]ermination [d]ecision" on the ground that "[o]nce the PTO has instituted IPR . . . the [Board] *must* reach the merits of the instituted claims and issue a final written decision" under "35 U.S.C. § 318(a)." Supplemental Brief for Appellant at 18-19, *Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, No. 15-1977 (Fed. Cir. July 29, 2016). This Court nonetheless concluded that the petitioner's "particular challenge" involving the agency's statutory "authority" to "terminate[]" the petitioner's "petitions after institution" was not "reviewable" under Section 314(d). *Medtronic*, 839 F.3d at 1385-86 (quotation marks omitted). Similarly, the petitioners in

19

*Sling TV* asserted that Section 314(d) did not bar their claim that the Board "exceeded its statutory authority" by "refusing to proceed to final written decision under § 318(a)." Opening Brief for Appellants at 48, *ARRIS Sols., Inc. v. Realtime Adaptive Streaming LLC*, No. 20-1596 (Fed. Cir. June 22, 2020) (citing *Thryv*, 590 U.S. at 58; *SAS*, 584 U.S. at 371).[3] Yet this Court dismissed the appeal under Section 314(d), explaining that this Court's "precedent equating a deinstitution decision with an initial decision to deny institution" foreclosed the petitioners' claims. *Sling TV*, 840 F. App'x at 599.

    c. InComm fares no better in contending that "judicial review remains available consistent with the [APA]." Br. 32 (quoting *SAS*, 584 U.S. at 371). This Court has previously rejected an attempt to circumvent Section 314(d)'s jurisdictional bar by invoking the APA, explaining that the APA "is not a jurisdiction-conferring statute." *GTNX*, 789 F.3d at 1313 (quotation marks omitted). In any event, the APA's default cause of action is unavailable when other "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or when "agency action is committed to agency discretion by law," *id.* § 701(a)(2). Both limitations apply here. Section 314(d) "preclu[des] . . . review" of decisions relating to institution within the meaning of the APA. *Apple I*, 63 F.4th at 13-14. And through Section 314(a) and (d), "Congress has committed the decision to institute inter partes review to the Director's unreviewable

---

    [3] Consolidated with *Sling TV, LLC v. Realtime Adaptive Streaming LLC*, Nos. 20-1601, -1602 (Fed. Cir.).

discretion." *Arthrex*, 594 U.S. at 8-9; *see Cuozzo*, 579 U.S. at 273; *Apple II*, 166 F.4th at 1360-61. Thus, judicial review of decisions covered by Section 314(d) would not be "consistent with the [APA]." *SAS*, 584 U.S. at 371.

d. Nor can InComm avoid Section 314(d)'s appeal bar by asserting that the USPTO engaged in "shenanigans." Br. 32 (quoting *SAS*, 584 U.S. at 371). In *Cuozzo*, the Supreme Court observed that Section 314(d) does not "categorically preclude review of a final decision" embodying "shenanigans" such as a "due process problem with the entire proceeding" or "canceling a patent claim for indefiniteness under § 112 in inter partes review." 579 U.S. at 275 (quotation marks omitted). But even assuming *Cuozzo* "suggest[s] that there might be exceptions to [Section 314(d)'s] general rule of unreviewability where the agency engaged in blatant violations of legal constraints" or constitutional violations, *IGT*, 144 F.4th at 1367, any such exceptions to Section 314(d)'s appeal bar would have no applicability here.

InComm does not raise any constitutional challenges in this appeal, and regardless, any constitutional claims would be potentially cognizable only through a mandamus action, not an appeal. *See Mylan*, 989 F.3d at 1382.[4] Instead, InComm contends that the agency exceeded its statutory authority by terminating the inter partes review proceeding without "issu[ing] a final written decision on patentability."

---

[4] InComm has not requested a writ of mandamus if this Court lacks jurisdiction over its appeal. Any such request would thus be forfeited as well as meritless. *See Atlanta Gas*, 33 F.4th at 1356 n.3 (rejecting appellant's request to "treat its appeal as a petition for a writ of mandamus" that was raised "for the first time in reply").

21

Br. 33.  But this Court has "refused to treat an allegation" that the agency "exceeded its statutory authority in the context of [a] reconsideration of an institution decision" as a "'shenanigan' exempt from § 314(d)'s bar on reviewability." *Ethanol Boosting*, 162 F.4th at 1160.  Similarly, claims that the Director "acted arbitrarily and capriciously" in denying institution are "the kinds of arguments" that this Court "ha[s] said are not reviewable in light of § 314(d)." *Motorola*, 159 F.4th at 38.

Regardless, InComm is wrong that Section 318(a) precludes dismissal of an instituted inter partes review absent some basis "specifie[d]" in the AIA, such as Section 315(b)'s time bar, estoppel under Section 315(e)(1), or settlement under Section 317(a).  Br. 29-30.  As this Court has explained, "there is no requirement that once instituted, [inter partes reviews] must proceed through final written decisions." *BioDelivery*, 935 F.3d at 1366.  On the contrary, Section 318(a) provides that if "an inter partes review is instituted *and not dismissed* under this chapter," the Board "shall issue a final written decision with respect to the patentability" of the challenged claims.  35 U.S.C. § 318(a) (emphasis added).  Section 318(a) thus expressly "contemplates that a proceeding can be 'dismissed' after it is instituted." *Medtronic*, 839 F.3d at 1385.  And as discussed above, the Board (or the Director) may reconsider earlier decisions regarding institution.  *See supra* pp. 13-17; *see also BioDelivery*, 935 F.3d at 1366 (noting USPTO's "inherent, 'default authority'" to reconsider institution decisions).

In repeatedly recognizing the agency's authority to terminate an instituted inter partes review, this Court has never suggested that such authority is limited to certain grounds specifically enumerated in the AIA. Indeed, the inter partes review petitioners in both *Medtronic* and *Sling TV* argued that the "statute permits dismissal without a final written decision only in the event of settlement" under Section 317. Supplemental Brief for Appellant, *Medtronic*, *supra*, at 19 n.11; *see* Opening Brief for Appellants, *ARRIS*, *supra*, at 22 n.7 (similar). Yet this Court did not endorse that asserted limitation on the agency's dismissal authority in either case. *See Medtronic*, 839 F.3d at 1385-86; *Sling TV*, 840 F. App'x at 598-99. Although InComm would apparently permit the USPTO to terminate on some grounds besides settlement, its theory is equally inconsistent with this Court's case law.

In particular, InComm's cramped view of the USPTO's authority to terminate a previously instituted inter partes review cannot be squared with this Court's decision in *BioDelivery*, where this Court upheld a termination that was not based on any statutory bar or settlement. There, once the Supreme Court in *SAS* held that partial institution was unavailable, the Board reconsidered institution and terminated the inter partes review, finding it "neither in the interest of the efficient administration of the Office, nor in the interest of securing an inexpensive resolution of th[e] proceeding." *BioDelivery*, 935 F.3d at 1364-65 (quotation marks omitted). This Court dismissed the petitioner's appeals under Section 314(d), explaining that the Board "properly exercis[ed] its discretion" in "revisiting its institution decisions" and

23

deciding "not to institute review at all." *Id.* at 1366. It stressed that such a decision was consistent with the Director's obligation to "consider the efficiency of the Patent Office in conducting [inter partes review] proceedings." *Id.* at 1367 (citing 35 U.S.C. § 316(b)). Far from suggesting that administrative-efficiency concerns were an improper basis for termination, *cf.* Br. 30 n.6, *BioDelivery* reflects the agency's ability to terminate a previously instituted inter partes review in light of the "'efficient administration of the Office'"—a "consideration[]" that is "uniquely within [the Board's] discretion to consider." *Atlanta Gas*, 33 F.4th at 1354 (quoting *BioDelivery*, 935 F.3d at 1364-65).

Next, InComm errs to the extent it attempts to derive a limitation on USPTO's authority to terminate an inter partes review without a final written decision from Section 318(a)'s statement that the Board must issue a final written decision if "an inter partes review is instituted and not dismissed *under this chapter.*" 35 U.S.C. § 318(a) (emphasis added); *see* Br. 29. InComm fails to explain why the Director's termination here was not "under this chapter." The initial decision to institute an inter partes review was plainly "under" chapter 31—in particular, Section 314(a). *See Apple I*, 63 F.4th at 6-7; Appx226. And the Director's decision to terminate the review is "fairly characterized" as a "reconsideration" of the institution decision. *Medtronic*, 839 F.3d at 1384-85. The two decisions are thus equally rooted in chapter 31.

The Director thus acted well within his statutory authority in "vacat[ing]" the Board's final written decision and "terminat[ing]" the proceeding without a final

24

written decision. Appx4. But at a minimum, the Director did not "blatant[ly] violat[e]" any "legal constraints," as would be required to support any potential "exception[]" to Section 314(d)'s "general rule of unreviewability." *IGT*, 144 F.4th at 1367. At bottom, InComm raises nothing more than an ordinary statutory-interpretation dispute (and routine arbitrary-and-capricious challenges). Section 314(d) would be rendered meaningless if every claim like those at issue here qualified as reviewable "shenanigans." *Cuozzo*, 579 U.S. at 275.

### B.    InComm Identifies No Statutory Right To Appeal The Director's Decision Here

This Court separately lacks jurisdiction over InComm's appeal because no statutory provision authorizes InComm to appeal the Director's vacatur of the Board's final written decision and termination of the inter partes review.

1. Section 319 provides that a "party dissatisfied with the final written decision of the [Board] under section 318(a) may appeal the decision pursuant to sections 141 through 144." 35 U.S.C. § 319. Section 318(a), in turn, specifies a particular type of "final written decision"—one "with respect to the patentability of any patent claim challenged." *Id.* § 318(a). Section 141 similarly specifies that a "party to an inter partes review . . . who is dissatisfied with the final written decision of the [Board] under section 318(a) . . . may appeal the Board's decision" to this Court. *Id.* § 141(c). As this Court has explained, the "statutory grant of jurisdiction" under 28 U.S.C. § 1295(a)(4)(A) "matches the appeal right in" Sections 319 and 141(c). *St. Jude*, 749

25

F.3d at 1376; *cf. Mylan*, 989 F.3d at 1378 (noting that "more specific statute[s]" limit "the 'appeal from a decision' language in § 1295(a)(4)"). Thus, appeals from decisions other than "the Board's decision under section 318(a) on the merits of the *inter partes* review" are generally "outside" this Court's jurisdiction. *St. Jude*, 749 F.3d at 1376; *see also Cuozzo*, 579 U.S. at 272 (Section 319 "limit[s] appellate review to the 'final written decision'"); *Medtronic*, 839 F.3d at 1385 (explaining that "appeals from final decisions" in inter partes reviews "will generally be limited to a 'decision with respect to . . . patentability'" (quoting 35 U.S.C. § 318(a))).

Applying these principles, in *GTNX*, this Court concluded that it lacked jurisdiction over an appeal from a Board decision "vacat[ing]" its prior decisions to institute post-grant reviews and "terminat[ing]" the proceedings "without addressing any issues of patentability." 789 F.3d at 1311. Section 329, the provision governing appeals from post-grant reviews, similarly authorizes appeal only from "the final written decision of the [Board] under section 328(a)." 35 U.S.C. § 329. The Court in *GTNX* explained that a "§ 328(a) decision"—a decision "reached after conduct of the review" that "make[s] a determination with respect to patentability"—is "the only appealable decision within the statutory regime." 789 F.3d at 1312. The Board's order in *GTNX* vacating its institution decisions and terminating the proceedings was not such a decision. *Id.* The order thus fell "outside 35 U.S.C. §§ 141(c), 328(a), 329 and, in turn, outside 28 U.S.C. § 1295(a)(4)(A)." *Id.*; *see also GEA Process Eng'g, Inc. v. Steuben Foods, Inc.*, 618 F. App'x 667, 668-69 (Fed. Cir. 2015) (holding that Section 319

26

did not authorize appeal from decision vacating institution decisions and terminating inter partes reviews).

So too here. The Director's order "did not make a determination with respect to patentability." *GTNX*, 789 F.3d at 1312; *see* Appx3-4. Instead, it "vacated" the Board's final written decision, and like the order in *GTNX*, it "terminated" the proceeding. Appx4. The Director also emphasized that the order "does not constitute a final written decision under 35 U.S.C. § 318(a)." Appx4; *see also* 37 C.F.R. § 42.75(d)(1) (providing that the Board's final written decision does not "become the final agency decision" if a party timely "requests . . . Director Review"). Accordingly, there is no "final written decision . . . under section 318(a)" from which InComm could appeal under Section 319. 35 U.S.C. § 319.

2. InComm's attempts to resist this straightforward application of Section 319 are unavailing.

First, InComm invokes (Br. 24-26) *Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345 (Fed. Cir. 2018), but that decision is not to the contrary. There the Board entered an adverse judgment against the patent owner under 37 C.F.R. § 42.73(b) after the patent owner disclaimed the claims challenged in a petition for inter partes review. *Id.* at 1347-48. This Court in *Arthrex* held that "the language of 28 U.S.C. § 1295 appears to provide for appeal" because the Board's "adverse judgment" was "a decision of the Board . . . 'with respect to' an inter partes review proceeding." *Id.* at 1348 (quoting 28 U.S.C. § 1295(a)(4)(A)). But the Court there addressed a Board

27

decision giving legal effect to the cancellation of patent claims, and it emphasized that its holding was limited to "final adverse judgment decisions." *Id.* at 1349. And this Court has subsequently clarified that *Arthrex* "did not involve a deinstitution decision" and "could not overrule [this Court's] precedent" holding that the Court lacks jurisdiction over appeals from deinstitution decisions. *Sling TV*, 840 F. App'x at 599; *see also Mylan*, 989 F.3d at 1379 n.3.

Further, to the extent *Arthrex*'s holding was informed by the fact that "an estoppel effect attached" to the Board's adverse judgment against the patent owner, 880 F.3d at 1347, only a proceeding that "results in a final written decision under section 318(a)" estops the petitioner from taking certain actions before the USPTO or in district court, 35 U.S.C. § 315(e). The inter partes review here resulted in no final written decision, *see* Appx4, so Section 315(e) estoppel does not apply. *See* Decision on Remand at 9, *In re Burke*, Ex Parte Reexamination Control No. 90/019,617 (Apr. 27, 2026) ("[E]stoppel under 35 U.S.C. 315(e)(1) is not triggered by a Director-vacated final written decision.").

Next, InComm similarly errs in asserting that the Director's order here is a "final decision with respect to patentability" because the Director "reached the merits of patentability." Br. 27-28 (alteration and quotation marks omitted); *see* Br. 26 (similar). After determining that the Board had "improperly credit[ed]" InComm's expert testimony and that the Board's finding of a motivation to combine Szrek and Llach "rested" on this testimony, the Director "vacated" the Board's "finding of

28

unpatentability on the Szrek-based grounds." Appx3. But the Director made no affirmative finding that InComm had failed to prove the challenged claims unpatentable based on Szrek and Llach. For instance, the Director did not decide whether "other documentary evidence, such as the teachings of the prior art," could support a "motivation finding" apart from any "expert testimony." *Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1368-69 (Fed. Cir. 2022); *see* Appx363-364 (InComm relying on Szrek's "express[] . . . teaching[s]" in asserting a motivation to combine). Similarly, although the Director determined that it would be "inappropriate" to rely on InComm's expert testimony in addressing the petition's Irwin-based grounds, the Director made no finding on whether InComm had proven unpatentability based on those grounds. Appx4. Instead, the Director "vacated" the Board's final written decision and "terminated" the proceeding without making any findings with respect to the patentability of any challenged claims. Appx4.

This disposition of the inter partes review—just like a "non-institution decision"—"has no legal effect on the underlying patent rights and obligations" and "leaves [the] patent challenger's actual legal rights and obligations unchanged." *Apple II*, 166 F.4th at 1361. The Director's termination decision thus leaves InComm and Blackhawk in the same legal position as if no inter partes review had been instituted. Section 319 does not authorize appeal from such a disposition.

Nor does the APA's "default judicial review provision" in 5 U.S.C. § 704 provide InComm a cause of action. *Nebraska Pub. Power Dist. v. United States*, 590 F.3d

29

1357, 1367 (Fed. Cir. 2010); *see* Br. 32-34.[5] Again, review under the APA is unavailable when "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). And such preclusion can arise not only from "express language" like Section 314(d)'s appeal bar, "but also from the structure of the statutory scheme." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984). The AIA specifically authorizes appeal from a limited type of agency action: a final written decision resolving the challenged claims' patentability. 35 U.S.C. §§ 141(c), 319; *see id.* § 318(a). And it contains no "express provision" authorizing appeals from other dispositions of inter partes reviews. *Block*, 467 U.S. at 347. "[T]his omission provides persuasive evidence that Congress deliberately intended to foreclose further review" of other dispositions such as the Director's termination without a final written decision here. *United States v. Erika, Inc.*, 456 U.S. 201, 208 (1982). InComm's argument that "any final [USPTO] decision that is not an institution decision" is appealable, Br. 1, effectively reads Section 319 out of the AIA.

Finally, the USPTO's Director-review regulations do not authorize InComm to appeal the Director's decision here. Br. 30-31. Under those regulations, "[a] party may appeal a Director Review decision of a final decision under" Section 318 "using the same procedures for appealing other decisions under" Sections 141(c) and 319.

---

[5] To the extent that APA review is available regarding the USPTO's actions under the AIA, such review must be initiated through a district-court action, not an action in this Court. *See Apple I*, 63 F.4th at 14-18 (remanding an APA rulemaking claim to district court).

30

37 C.F.R. § 42.75(e)(3). This provision thus clarifies that when the Director issues final written decisions "himself on behalf of the Board," *Arthrex*, 594 U.S. at 25, those decisions are appealable to the same extent as final written decisions issued by the Board in the first instance. But the regulation's text makes clear that Section 319's "procedures for appealing" final written decisions still govern the Director's decisions on Director review. 37 C.F.R. § 42.75(e)(3). The regulation thus does not (and could not) authorize appeal of dispositions by the Director other than a "final written decision determining patentability," which is "the only appealable decision within the statutory regime." *GTNX*, 789 F.3d at 1311-12 (quotation marks omitted).

## II. The Director's Termination Order Was Amply Supported And Reasonably Explained

Even if this Court had jurisdiction over InComm's appeal of the Director's order vacating the Board's final written decision and terminating the inter partes review, the order was fully consistent with the APA. InComm does not appear to dispute (Br. 47) that the Director's ultimate decision to terminate the inter partes review must be upheld so long as it is not "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). A court applying the APA's arbitrary-and-capricious standard "simply ensures

31

that the agency . . . has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

InComm treats the Director's underlying "determination that InComm's expert lacked credibility" as a factual finding reviewed for substantial evidence. Br. 34; *see* Br. 22. Some decisions of this Court have reviewed the USPTO's "credibility findings" for "substantial evidence," *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1382 n.2 (Fed. Cir. 2021), while others have reviewed the agency's determinations on "the credibility of expert testimony" for "abuse of discretion," *Sierra Wireless, ULC v. Sisvel S.p.A.*, 130 F.4th 1019, 1024 (Fed. Cir. 2025). The Director's credibility determination here easily passes muster under either deferential standard.

### A. The Director Reasonably Determined That The Board Improperly Credited InComm's Expert Testimony

1. The Director's termination order focused on testimony from InComm's expert, Mr. Hutton, that a skilled artisan would have been motivated to combine Szrek and Llach's teachings to obtain the invention claimed in the '451 patent. *See* Appx2-3. Broadly speaking, the '451 patent claims methods for activating pre-printed lottery tickets in which a retailer's existing point-of-sale hardware sends and receives requests from a third-party transaction processor, *i.e.*, a separate device not controlled by the retailer. Appx77; *see* Appx11-16. In his declaration, Mr. Hutton contended that a skilled artisan would have been motivated to modify Szrek's lottery-ticket

32

system to include a third-party transaction processor as described in Llach. *See* Appx1506. In particular, he opined that a skilled artisan "would have found it obvious to modify Szrek's system for activating lottery tickets to incorporate Llach's teachings of an intermediary transaction computer between Szrek's cash register and game provider system." Appx1506. According to Mr. Hutton, among other benefits, such a "centralized intermediary" would enable "support for different game providers, such as different lottery companies." Appx1506.

During Mr. Hutton's deposition, Blackhawk's counsel sought to clarify how Mr. Hutton proposed to incorporate Llach's intermediary transaction computer into Szrek's lottery-ticket system. *See* Appx1831 (103:11-18). Blackhawk's counsel thus produced an annotated version of a figure from the '451 patent—later designated as Exhibit 2050—depicting an intermediary transaction computer that transmits communications between Szrek's cash register and game provider system:



33

Appx1798; *see* Appx1831 (103:24-104:8).

Blackhawk's counsel asked whether this figure "accurately represent[ed]" Mr. Hutton's proposed modification, and Mr. Hutton answered "No." Appx1831 (104:6-9). When asked how he would "modify this drawing," Mr. Hutton stated that he would place the intermediary transaction computer "between the store back office and the game provider," with communications between those two devices. Appx1831 (104:14-105:6). Blackhawk's counsel created another figure depicting the modification Mr. Hutton described, which was later designated as Exhibit 2049:



Appx1789; *see* Appx1833 (111:2-15).

Later in the deposition, Mr. Hutton confirmed that Exhibit 2050 did not reflect the "modification of Szrek that [he] had envisioned" in his declaration because the cash register was "not using the store back office" to "talk to the intermediary transaction computer." Appx1835 (120:14-121:16). After Blackhawk's counsel

34

reproduced Exhibit 2050 again, Mr. Hutton reiterated that the figure was "wrong." Appx1836 (122:12-123:13). But immediately thereafter, Mr. Hutton testified that his declaration's reference to a cash register "could be interpreted as being the cash register[] plus the store back office, or just the cash register." Appx1836 (123:15-21). Mr. Hutton thus stated that "both of those embodiments that we drew are consistent with what [he] wrote" in his declaration. Appx1836 (123:23-124:1).

In its final written decision, the Board did "not find Mr. Hutton's deposition testimony credible that he intended to equate his use of 'Szrek's cash register'" in his declaration "to a point of sale that would include a store back office." Appx37. The Board thus found "not credible" Mr. Hutton's "explanation as to how his [d]eclaration supports" the combination of Szrek and Llach as depicted in Exhibit 2049. Appx37. The Board nonetheless credited Mr. Hutton's testimony based on Exhibit 2050. Appx37 & n.16. The Board acknowledged that Mr. Hutton "at first[] rejected the arrangement shown in Exhibit 2050," but it stated that "on further questioning, Mr. Hutton confirmed that Exhibit 2050 reflects one arrangement of the combination that falls within what he intended to convey in his [d]eclaration." Appx37 n.16.

On Director review of the Board's decision, the Director reasonably determined that "Mr. Hutton gave conflicting testimony about how he proposed that the ordinarily skilled artisan would have modified Szrek's disclosures to include Llach's transaction computer." Appx3. As his deposition testimony reflects, "Mr.

35

Hutton testified on cross-examination that Exhibit 2050 does not represent the modification described in his declaration but later reversed himself and claimed that it does represent his proposal." Appx3 (footnote and citations omitted). And the Board found that Mr. Hutton "lacked credibility at least in certain respects"—in particular, as to his assertion that he intended his declaration to encompass the Exhibit 2049 configuration. Appx3. The Director thus reasonably concluded that the Board "improperly credit[ed]" Mr. Hutton's "contradictory testimony" about the Exhibit 2050 arrangement. Appx3. And the Director accordingly "vacated" the Board's "finding of unpatentability on the Szrek-based grounds," which "rested" on Mr. Hutton's testimony about the Exhibit 2050 configuration. Appx3.

2. InComm fails to show that the Director acted unreasonably in determining that the Board improperly credited Mr. Hutton's testimony. According to InComm, Mr. Hutton "did not contradict himself" because he "was clearly testifying that Exhibit 2050 *as modified by one of his suggestions* would be consistent with his proposed combination." Br. 35, 40. But "[d]ecisions about credibility of witnesses" are "committed to the sound discretion" of the agency—here, the Director on review of the Board's final written decision. *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 1366 (Fed. Cir. 2022); *see also, e.g.*, *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1358 (Fed. Cir. 2018) (declining to "disturb" the USPTO's "credibility determinations"). In any event, Mr. Hutton's testimony on its face belies InComm's characterization. Mr. Hutton testified that "*both* of those embodiments that we drew

36

are consistent with what [he] wrote" in his declaration. Appx1836 (123:23-124:1) (emphasis added). And the only two "embodiments" drawn during the deposition were Exhibit 2050 (the original illustration created by Blackhawk's counsel) and Exhibit 2049 (the modified illustration reflecting Mr. Hutton's modifications). *See supra* pp. 33-35. The Director thus reasonably found that Mr. Hutton "reversed himself and claimed that" Exhibit 2050 "does represent his proposal." Appx3.

InComm also faults the Director for "substitut[ing] his own credibility determination" for the Board's. Br. 3. But under *Arthrex*'s Appointments Clause remedy, the Board's decision cannot become the "final decision binding the Executive Branch" absent an opportunity for Director review. 594 U.S. at 23. Accordingly, the Director has authority to "reach his own decision" in inter partes reviews, without any requirement that he defer to any aspect of his subordinates' decision. *Id.* at 26. Contrary to InComm's suggestion, the Director's reference to "abuse[]" of "discretion" in describing the error he identified in the Board's decision, Appx3, cannot bind him to a more "deferential standard" for reviewing the Board's analysis, Br. 40 (quotation marks omitted).

InComm fares no better in contending that the "inconsistency" the Director found in Mr. Hutton's testimony was "not material" to his asserted "reasons to combine the prior art." Br. 42-43. Having determined that Mr. Hutton "gave conflicting testimony" about how he proposed to combine Szrek and Llach's

37

teachings, Appx3, it was eminently reasonable for the Director to discredit Mr. Hutton's testimony about the supposed benefits of the combination.

Further, to the extent InComm separately challenges (*see* Br. 44-47) the Board's finding that Mr. Hutton's testimony about Exhibit 2049 was "not credible," that finding was amply supported, and the Director reasonably relied on it. Appx36-37; *see* Appx3. Mr. Hutton's declaration opined that a skilled artisan would have placed Llach's intermediary transaction computer "between Szrek's cash register and game provider system," Appx1506, whereas in Exhibit 2049, "the intermediary transaction computer is placed between the store back office and game provider system," Appx36; *see supra* p. 34. The Board reasonably rejected Mr. Hutton's post hoc attempt to "equate" the cash register with the store back office. Appx37. As the Board observed, InComm had not "identified any instance" where Mr. Hutton's declaration used "Szrek's cash register" to encompass both the cash register and the store back office. Appx37; *see* Appx1506-1509. The Board "was not required to credit" Mr. Hutton's asserted explanation for this inconsistency "simply because [he] offered it." *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1022 (Fed. Cir. 2017).

## B. The Director Reasonably Explained His Decision To Terminate The Inter Partes Review

The Director more than adequately explained the basis for his reasonable decision to terminate the inter partes review rather than remand for the Board to consider the petition's unpatentability grounds based on Irwin. As the Director

38

explained, InComm's petition also "rel[ied] on Mr. Hutton's testimony" to support its obviousness arguments involving Irwin. Appx4; *see, e.g.*, Appx107-123. The Director reasoned that "it would be inappropriate" to rely on Mr. Hutton's testimony "for the other grounds" given his determination that "material aspects" of Mr. Hutton's testimony were "not credible." Appx4. That conclusion was consistent with the principle that "the testimony of one who has been found unreliable as to one issue may properly be accorded little weight as to the next." Appx4 (quoting *NLRB v. Pittsburgh S.S. Co.*, 337 U.S. 656, 659 (1949)). And given his determination that it would be improper to rely on Mr. Hutton's testimony in deciding the grounds that the Board had declined to reach, the Director "terminated" the inter partes review. Appx4. In support of his disposition, the Director cited this Court's decision in *BioDelivery*, in which this Court dismissed a challenge to a Board decision deinstituting an inter partes review because most of the petition's grounds "would have likely led to" a rejection of those grounds. 935 F.3d at 1367. The Court explained that the Board's approach was consistent with its "statutory charge to consider the efficiency of the Patent Office in conducting [inter partes review] proceedings." *Id.*

InComm contends that the Director "abused his discretion in refusing to remand" because the inconsistencies the Director identified in Mr. Hutton's testimony about the Szrek-based grounds were not "material" to the Irwin-based grounds that the Board did not reach. Br. 47-48. Similarly, according to InComm, the Board's finding that Mr. Hutton's testimony about Exhibit 2049 lacked

credibility—which the Director did not disturb—"is not a permissible basis to hold that all of his testimony should be discredited." Br. 47; *see* Br. 44 (similar). Again, however, InComm improperly invites this Court to second-guess the Director's "[d]ecisions about credibility of witnesses." *Tiger Lily*, 35 F.4th at 1366. The Director here reasonably determined that the contradictions in Mr. Hutton's testimony about how he proposed to combine Szrek and Llach—a basic premise of his opinion that the claimed invention would have been obvious—rendered all of his testimony unreliable. *See Hyman v. Brown*, 927 F.3d 639, 662 (2d Cir. 2019) (explaining that the "factfinder is free to believe all, some, or none of a witness's testimony" (quotation marks omitted)). The Director thus declined to remand for the Board to adjudicate the petition's remaining grounds; InComm had also supported those grounds with Mr. Hutton's testimony, and the Director was under no obligation to devote more agency resources to a petition relying on an expert already found to have offered non-credible testimony. The Director's determination was "reasonable and reasonably explained" and easily meets the APA's "minimal standard[] of rationality." *Wynnewood Refin. Co. v. EPA*, 77 F.4th 767, 782 (D.C. Cir. 2023) (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, this Court should dismiss InComm's appeal, or in the alternative, affirm the Director's order vacating the Board's final written decision and terminating the inter partes review.

Respectfully submitted,

*Of Counsel*:

NICHOLAS T. MATICH
*Solicitor*

ROBERT J. MCMANUS
*Senior IP Legal Counsel*

WILLIAM LA MARCA
*Special Counsel for IP Litigation*

FAHD H. PATEL
PETER J. SAWERT
*Associate Solicitors*

*U.S. Patent and Trademark Office*

May 2026

BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD

/s/ *Samuel B. Goldstein*

SAMUEL B. GOLDSTEIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7242*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-0718*
*samuel.b.goldstein@usdoj.gov*

41

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Circuit Rule 32(b)(1) because it contains 9799 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

/s/ *Samuel B. Goldstein*

Samuel B. Goldstein

**ADDENDUM**

# TABLE OF CONTENTS

35 U.S.C. § 141.................................................................................................. A1

35 U.S.C. § 314.................................................................................................. A2

35 U.S.C. § 318.................................................................................................. A3

35 U.S.C. § 319.................................................................................................. A4

**35 U.S.C. § 141**

**§ 141. Appeal to Court of Appeals for the Federal Circuit**

(a) Examinations.—

An applicant who is dissatisfied with the final decision in an appeal to the Patent Trial and Appeal Board under section 134(a) may appeal the Board's decision to the United States Court of Appeals for the Federal Circuit. By filing such an appeal, the applicant waives his or her right to proceed under section 145.

(b) Reexaminations.—

A patent owner who is dissatisfied with the final decision in an appeal of a reexamination to the Patent Trial and Appeal Board under section 134(b) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

(c) Post-Grant and Inter Partes Reviews.—

A party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) or 328(a) (as the case may be) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

(d) Derivation Proceedings.—

A party to a derivation proceeding who is dissatisfied with the final decision of the Patent Trial and Appeal Board in the proceeding may appeal the decision to the United States Court of Appeals for the Federal Circuit, but such appeal shall be dismissed if any adverse party to such derivation proceeding, within 20 days after the appellant has filed notice of appeal in accordance with section 142, files notice with the Director that the party elects to have all further proceedings conducted as provided in section 146. If the appellant does not, within 30 days after the filing of such notice by the adverse party, file a civil action under section 146, the Board's decision shall govern the further proceedings in the case.

A1

**35 U.S.C. § 314**

### § 314. Institution of inter partes review

(a) Threshold.—

The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

(b) Timing.—The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after—

    (1) receiving a preliminary response to the petition under section 313; or

    (2) if no such preliminary response is filed, the last date on which such response may be filed.

(c) Notice.—

The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable.  Such notice shall include the date on which the review shall commence.

(d) No Appeal.—

The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

**35 U.S.C. § 318**

### § 318. Decision of the Board

(a) Final Written Decision.—

If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

(b) Certificate.—

If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

(c) Intervening Rights.—

Any proposed amended or new claim determined to be patentable and incorporated into a patent following an inter partes review under this chapter shall have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation therefor, before the issuance of a certificate under subsection (b).

(d) Data on Length of Review.—

The Office shall make available to the public data describing the length of time between the institution of, and the issuance of a final written decision under subsection (a) for, each inter partes review.

**35 U.S.C. § 319**

**§ 319. Appeal**

A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) may appeal the decision pursuant to sections 141 through 144. Any party to the inter partes review shall have the right to be a party to the appeal.